STEPHEN D. THOMPSON v. DAVID P. CLAY.

60  627
60  331
60  627
66  231

*Sale of timber through alleged agent—Vendor cannot testify to effect on his mind, as to existence of agency, of prior conversation with principal —Jury before whom conversation is detailed are the proper judges—Purchase of logs for defendant by alleged agent two months after disputed sale, irrelevant—Deposition—If taken out of the State, official character of officer before whom taken must be certified to under How. Stat. sec. 7475—Notice of reception should be given under circuit court rule 51— Rebutting testimony—Must antagonize defendant's case to be admissible.*

1. In a case where the *agency* of a party who had purchased timber of the plaintiff, as he claimed, for the defendant, was disputed by the defendant and his alleged agent, it is error to allow plaintiff to testify that a conversation had with the defendant prior to such purchase, which he had detailed to the jury, assisted him in forming an opinion that the party he had contracted with acted as defendant's agent in the purchase. The jury were the proper judges of the effect such conversation had, or ought to have had, on the plaintiff.

2. In a case where the issue was whether certain logs were sold by the plaintiff, as he claimed, to the defendant, but which defendant asserted were purchased for a corporation which had succeeded to his business, testimony tending to show the purchase by defendant of saw logs on *his own* account, two months after the sale by plaintiff, is irrelevant to the issue.

3. A deposition taken in Illinois, to be used in Michigan, pursuant to How. Stat. § 7475, cannot be read in evidence unless the official character of the person before whom the same was taken is certified to as required in said section. The presence of the attorney for the adverse party at the taking of the deposition cannot be regarded as a waiver of such certificate, or of any requisite of the statute to be complied with in the return of the deposition.

4. Plaintiff testified in making his case to the sale of certain pine timber to defendant, one Adams acting as defendant's agent in making the purchase, and that he then contracted with one Berry to cut, haul, and deliver the logs under the contract. Defendant contended that the timber was bought by Adams *of* Berry, who claimed to have purchased it *from* plaintiff, and introduced evidence tending to prove such facts; but offered no evidence to disprove the alleged contract *with* Berry to cut and deliver the logs *for* the plaintiff. On rebuttal, Berry and one Topping were permitted to testify to a conversation between plaintiff and Berry, in the absence of defendant and Adams, tending to establish such contract *with* Berry.

*Held,* that proof of such contract tended to rebut no part of the case made by the defendant; and the conversation testified to, having taken place without defendant's knowledge or that of his alleged agent, could have no binding force upon him.

*Held,* further, that it was also error to allow Berry to testify how much plaintiff had paid him upon his contract for putting in the logs; that such testimony had no relevancy to any *legitimate* issue in the case, and was entirely immaterial.

Error to Newaygo. (Fuller, J.) Argued February 18, 1886. Decided April 15, 1886.

Assumpsit. Defendant brings error. Reversed. The facts are stated in the opinion.

*John E. More,* for appellant:

The provision of the statute [How. Stat. § 7475] requiring a certificate to be attached to a deposition showing the official capacity in which the person acted before whom it was taken, is directory; and the notarial seal of the officer sufficiently shows his official character : Greenl. Ev. § 5, and cases cited. Furthermore, plaintiff's counsel appeared and cross-examined the witness, and raised no question as to the official capacity of the person before whom the deposition was taken.

Adams was a *special* and not a *general* agent of defendant for the purchase of logs, and could not bind his principal

unless *specially* authorized to make the contract : Wharton on Agency and Agents, §§ 121–2–4.

*George Luton* and *A. G. Day*, for plaintiff :

The deposition of the witness Sharpnack· was properly excluded, not being certified as required by How. Stat. § 7475 ; see, also, *Hall v. People*, 21 Mich. 456 ; *Wattles v. Moss*, 46 Id. 52 ; *Simons v. Morris*, 53 Id. 157 ; *Beidell v. Cook*, 1 Handy, 94 ; *Bell v. Morrison*, 1 Peters, 351 ; How. Stat. § 7469.

The taking of depositions being in derogation of the common law, and only a statutory privilege, the statute must be *strictly* followed : *Baxter v. Payne*, 1 Phinney (Wis.) 501 ; *Goodhue v. Grant*, Id. 556 ; *Lightfoot v. Cole*, 1 Wis. 26 ; *Bell v. Morrison*, 1 Peters, 351 ; *Cowan v. Ladd*, 2 Ohio St. 322 ; *Gilson v. McArthur*, 5 Ohio, 329.

The testimony of Berry and Topping to a conversation between plaintiff and Berry regarding the contract *with* Berry to put in the timber, tended to rebut the claim of defendant of a sale *to* Berry, and *by* him *to* the Newaygo Company, and was admissible under the following authorities : *Taff v Hosmer*, 14 Mich. 310–17 ; *Comstock v. Smith*, 20 Id. 338, 348 ; Reynolds' Stephen's Ev. art. 9, p. 15.

MORSE, J. This is an action in assumpsit, brought to recover about 253,000 feet of pine logs, at five dollars per thousand.

Plaintiff alleges that he sold the logs, at the price above stated, to defendant, through one Daniel M. Adams, claimed to be acting as agent of the defendant. He testifies that he contracted with said Adams for the sale to defendant of all the pine timber that should be cut from a certain piece of land, and which Mr. Cody, agreed upon as the scaler, would accept, at five dollars per thousand feet, delivered in the Muskegon river, and that he was to receive pay as fast as he got 100,000 feet afloat.

He also claims that he hired one Adolphus Berry to put the logs in, and was to pay him at the rate of three dollars per thousand for the job.

The defendant claims that he did not authorize Adams to contract for or purchase the logs on his account ; that Adams

was not his general agent for buying logs, but was the agent of the Newaygo Company, a corporation then organized and existing under the laws of this State, of which company defendant was president and general manager; that Adams did not buy the logs of plaintiff, but purchased them of said Adolphus Berry, who claimed to have bought the timber of plaintiff; that Adams bought the logs for the Newaygo Company, and that they were delivered to and received by that company, who were to and did pay Berry three dollars per thousand in full for his share, and to credit and did credit, by Berry's direction, with plaintiff's consent, two dollars per thousand upon their books to plaintiff for his share; that plaintiff traded at the store of the company a portion of his account, leaving at the time of the trial a balance upon the company's books in favor of plaintiff of $198.39, which the company was ready and willing to pay.

Upon this issue the case went to the jury, who found a general verdict for plaintiff in the sum of $1,343.24, and also found specially, in answer to questions propounded by plaintiff's counsel, that the sale of the logs in question was made by the plaintiff to the defendant, and that Adams bought the logs for the defendant.

Numerous errors are assigned in relation to the admission of certain testimony on the trial.

The plaintiff was allowed to testify that a certain conversation which he had some two months before the alleged sale of these logs with defendant (which conversation he had detailed to the jury) assisted him in forming an opinion that Adams was acting as the agent of defendant in buying the logs in question. The answer was given in answer to a direct question put by his counsel, against objection.

The jury were the proper judges as to what effect this conversation had, or ought to have had, upon plaintiff as to inducing him to believe Adams to be the agent of defendant; and it was error to permit plaintiff to state such effect.

The testimony of John Kinney that he sold defendant some logs in October, 1883, two months after the contract claimed in this case, could have done the defendant no harm,

as he himself admitted buying some logs during that year on his own account. It was not relevant to the issue, but it could have affected in no way the question in dispute, to wit, the agency of Adams, and was therefore a harmless error.

The witness Adams should have been permitted on re-direct examination to have fully answered the following question :

"*Question*. Well, in relation to the Hoag & Gidley contract, and that Bonner contract, how was it that they came to be made with D. P. Clay instead of the Newaygo Company ?"

The matter of these contracts had been drawn out by plaintiff's counsel, and defendant was manifestly entitled to a full explanation of them. We are not sure but he was afforded the opportunity, however, as the record is very blind, and not as full as it ought to have been on this subject. It seems the question was at first denied by the circuit judge, but afterwards he said :

"As I understand that these contracts were executed by Mr. Adams, and it is claimed by special authority or special arrangement, and that he had no general authority to make the contracts, and they wish to show that, let the jury have the testimony on both sides."

The witness then testified in relation to the execution of some other contracts, but gave no evidence, as appears from the record, as to the contracts mentioned in the question. It appears to us, however, that, under the language of the court above quoted, permission was granted him to do so, and that defendant's counsel might have availed himself of the privilege had he seen fit to do so.

The defendant offered in evidence the deposition of one William H. Sharpnack, taken pursuant to section 7475 of Howell's Statutes, before Paul Brown, a notary public in and for Cook county, state of Illinois. At the taking of said deposition both parties to this suit appeared by their respective counsel. There was no certificate attached to the deposition showing the official capacity of the notary, as required by the statute. The deposition was received and filed June

2, 1885. The trial commenced June 9, 1885, but no showing was made that any notice of the reception of the deposition was served upon the counsel for plaintiff under rule 51 of the circuit court.

The deposition was properly rejected. The proceeding being in derogation of the common law, and the deposition being admissible only by reason of the statute, its terms must be complied with. The argument that the counsel for plaintiff attended upon the taking of the testimony is not tenable. Such attendance could not be regarded as a waiver of any requisite of the statute to be complied with in the return of the deposition. It is also urged that the notarial seal of the officer affixed to his return is a sufficient compliance with the object and purpose of the statute; but the record does not show that any such seal was affixed.

Objection is also made to the evidence given in rebuttal of plaintiff, Adolphus Berry, and one Louis Topping, as to the contract between Berry and plaintiff in regard to putting in the logs. This testimony was offered and given, it is claimed, to rebut the claim made by defendant that Berry bought the logs of plaintiff, and to show that Berry did not so buy the logs, but entered into a contract with plaintiff to put them in the river at three dollars per thousand, as claimed by plaintiff. Defendant was not present at this conversation, nor was Adams, who purchased the logs.

We do not think this evidence was admissible. The issue was whether Adams bought the logs of Berry or of Thompson. It was entirely immaterial what talk or agreement Berry and plaintiff had, not in the presence of Adams or defendant, and unknown to them. The defendant offered and gave no evidence to disprove this alleged arrangement between plaintiff and Berry, to which plaintiff testified in his primary case. He contented himself with testimony tending to show that Berry sold the logs as his own.

This proof of a contract between plaintiff and Berry tended to rebut no part of the case made by defendant, and, taking place without the knowledge of defendant or his alleged agent, could have no binding force upon him. Yet

the jury were allowed to use the fact of such an agreement as evidence that defendant did not purchase of Berry, but of plaintiff.

Such was the object and manifest effect of the testimony. The circuit judge stated that the evidence was allowed for the purpose of showing that the plaintiff did not sell the logs to Berry. We can see no relevancy in admitting such proof, unless the jury were to infer from it that, because the plaintiff did not sell to Berry, therefore Berry could not have sold to Adams, as claimed by defendant.

The defendant claimed that Berry sold the logs pretending to own the timber, and this talk between the plaintiff and Berry, without the knowledge of defendant or Adams, had no tendency whatever to prove that Berry did not sell them as claimed by defendant.

It was also error to allow the witness Berry to testify how much the plaintiff had paid him upon his contract for putting in the logs. It had no relevancy to any legitimate issue in the case, and was entirely immaterial; and we cannot say that its admission may not have prejudiced the jury against the defendant's case.

Objections are made to the charge of the court, but upon a careful examination of the defendant's requests as refused, and the instructions of the circuit judge taken as a whole, we can find no error.

The entire charge was a very fair and proper one. It set out plainly and clearly the issues between the parties, and the respective claims of each. It sufficiently stated the requisites of a contract as to the meeting of the minds of the parties contracting, and that its terms must be fully understood alike by each. It placed the burden of proof upon the plaintiff to prove the authority of Adams to act for the defendant.

In speaking upon this branch of the case, the circuit judge, correctly, as we think, under the facts, instructed the jury that if the defendant, previous to the sale of the logs, told plaintiff that Adams was his agent for buying the logs, and plaintiff also knew of Adams buying logs of other parties

for defendant prior to or about this time, and not too far away, then the plaintiff would have reason to believe that Adams had a right to buy logs and make contracts binding on the defendant.

It is claimed by defendant's counsel that there was no evidence to support this part of the charge; but the plaintiff testified, substantially, that defendant told him, about two months before the sale in this case, that Adams was his man for buying logs, and also that he (plaintiff) knew about the time of his sale of Adams buying logs for defendant of different parties.

The circuit judge also instructed the jury that if Berry sold the logs to the Newaygo Company, or if they were delivered to that company, it understanding that it was buying the logs of Berry, and paid Berry three dollars per thousand for them, and credited the plaintiff with two dollars per thousand, and plaintiff kept on delivering the logs, knowing all about this, he could not complain here of defendant; or, if he received any pay upon the logs from the Newaygo Company, he could not come into court and claim he was dealing with defendant.

The court seemed to cover fairly and fully all the points in controversy, and to give in his general charge substantially all of the requests of the defendant's counsel that they were entitled to under the law as applicable to the case.

While the verdict of the jury may seem to have been unwarranted by the evidence, as claimed by defendant's counsel, we do not think the instructions of the court below were at fault in bringing about such a result.

It does pretty clearly appear, from the whole testimony, that none of these logs were ever delivered to the defendant, or were received by him, but were all received and handled by the Newaygo Company, and the judge so stated to the jury. It is also manifest from the record that Berry, who cut and put the logs afloat in the Muskegon river, dealt entirely with the company, and does not deny receiving his three dollars per thousand in full from it. There is no evidence that he had any dealings with defendant. The logs

were scaled by Cody, the scaler agreed upon by Adams and the party with whom he contracted, be it either the plaintiff or Berry, and the scale headed as follows: "S. D. Thompson, Pine. Scale of Logs put in by R. B. Berry for Newaygo Company." Nor is it very clear that Thompson did not deal with the Newaygo Company as to his pay instead of with the defendant.

But the plaintiff in his evidence testified that he sold the logs to Adams as the agent of Clay; that he never knew of any credit being made upon the books of the Newaygo Company to him at two dollars per thousand until he went to draw his pay; and that he knew nothing about the Newaygo Company's purchasing the pine, nor defendant's claim that it bought the logs of Berry, until after the commencement of this suit.

And although, as the record is presented to us, we should have found a different verdict, the weight of the testimony was for the jury, and the circuit judge would not have been warranted in taking the case from them; nor is the whole evidence set forth in the record.

For the errors enumerated, the judgment of the court below is reversed and a new trial granted, with costs of this Court to the defendant.

CAMPBELL, C. J. and SHERWOOD, J. concurred. CHAMPLIN, J. did not sit in this case.